**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA ROSA AGUILAR,<br><br>        Plaintiff,<br><br>    vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security,<br><br>        Defendant. | ) Case No. CV 13-1184-JPR<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>) REVERSING COMMISSIONER AND<br>) REMANDING FOR FURTHER<br>) PROCEEDINGS<br>)<br>)<br>)<br>) |

## I. PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying her application for supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed February 25, 2014, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

**II.  BACKGROUND**

Plaintiff was born on September 17, 1963, and moved to the United States at age 14. (Administrative Record ("AR") 86, 88, 335.) She did not attend school, was illiterate, and understood little English. (AR 34, 87-88.) She testified that she had not worked since 1987 other than caring for her grandchildren, for which she was compensated. (See AR 47-49, 91, 287.)

On August 11, 2005, Plaintiff filed an application for SSI, alleging disability beginning April 10, 2005. (See AR 127.) Her application was denied by an Administrative Law Judge in a written decision dated August 15, 2007. (AR 137-31.) The Appeals Council denied Plaintiff's request for review (AR 135-38), and Plaintiff did not appeal. On August 21, 2007, Plaintiff filed the present application for SSI. (See AR 22, 335.) She alleged that she had been unable to work since April 10, 2005, because of diabetes, back problems, osteoporosis, and headaches. (AR 86, 335, 340.) Plaintiff later stated that she stopped working because of work-related accidents in 1987. (See AR 86-87.) She alleged additional impairments, including fatigue, weakness, poor vision, eye pain, dizziness, depression, illiteracy, left-knee pain and instability, impaired function of her upper and lower extremities, hand tremors, and difficulty grasping, standing, and walking. (AR 346, 350.)

After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing before an ALJ. (See AR 172-73.) A hearing was held on July 22, 2009, at which Plaintiff, who was represented by counsel, appeared and testified through a Spanish-language interpreter. (AR 83.) A vocational

expert also testified. (AR 108.)  In a written decision issued August 7, 2009, the ALJ determined that Plaintiff was not disabled. (AR 139-52.)  On July 30, 2010, the Appeals Council vacated the decision for reasons unrelated to the issue presented here and remanded for further proceedings.  (AR 157-60.)

A second hearing was held on March 25, 2011, at which Plaintiff, who was still represented by counsel, appeared and testified, again in Spanish, as did a medical expert and a vocational expert. (AR 42-80.)  On March 25, 2011, the ALJ again determined that Plaintiff was not disabled. (AR 22-35.)  On December 17, 2012, the Appeals Council denied Plaintiff's request for review.  (AR 6-9.)  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from

the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

   A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of

impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

B. <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since August 21, 2007.[2] (AR 23.) At step two, he concluded that Plaintiff had severe impairments of a back disorder and decreased visual acuity. (AR 26.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 27.) At step four, he found that she retained the RFC to perform "light work" with additional limitations. (<u>Id.</u>) There was insufficient evidence of past relevant work. (AR 33.) At step five, the ALJ concluded that Plaintiff could perform jobs that existed in significant numbers in the national economy. (AR 34-35.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 35.)

**V. DISCUSSION**

<u>The ALJ Erred in Finding That the Vocational Expert's Testimony Was Consistent With the DOT</u>

Plaintiff contends that the testimony of vocational expert Barbara Miksic conflicted with the Dictionary of Occupational Titles ("DOT") and that the ALJ erred in failing to elicit from Miksic an explanation for the deviation. (J. Stip. at 7.)

---

[2] Plaintiff's prior application for SSI was denied without appeal, and the ALJ, finding no basis to reopen it, deemed it "final and binding as it related to the issue of disability during the relevant period on or prior to August 15, 2007." (AR 22.) Thus, although Plaintiff alleged an onset date of April 10, 2005, the earliest possible onset date for her present application was the day after the denial of her prior application, or August 16, 2007. (<u>Id.</u>) The ALJ instead used the August 21, 2007 application date, and Plaintiff does not challenge that portion of the decision.

### A. Relevant background

At the March 3, 2011 hearing, the ALJ presented to Miksic a hypothetical individual of Plaintiff's age, education, work experience, and skill set who was capable of light work with additional limitations and could not "effectively communicate in English." (AR 73-75.) Miksic testified that such an individual could work as a ticket taker (DICOT 344.667-010, available at 1991 WL 672863), parking-lot attendant (DICOT 915.473-010, available at 1991 WL 687865), and assembler (DICOT 732.684-018, available at 1991 WL 679839). (AR 75.) In response to questioning by Plaintiff's counsel, Miksic testified that her answer would not change if the hypothetical individual "was illiterate, unable to read and write in any language." (AR 78.) The ALJ inquired whether Miksic's testimony conflicted with the DOT, and she said it did not. (AR 79.) In his March 25, 2011 decision, the ALJ treated Plaintiff "in the same way as an individual who is illiterate in English" (AR 34) and found that Plaintiff would be able to perform the three jobs identified by Miksic.

### B. Applicable law

The DOT is the best source of information about how a job is generally performed. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); see also Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); 20 C.F.R. § 416.966(d). In order to rely on a vocational expert's testimony regarding the requirements of a particular job, an ALJ must first inquire whether her testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p,

2000 WL 1898704, at *4 (Dec. 4, 2000)). When such a conflict exists, the ALJ may accept vocational expert testimony that contradicts the DOT only if the record contains "'persuasive evidence to support the deviation.'" Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435); see also Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (finding error when "ALJ did not identify what aspect of the VE's experience warranted deviation from the DOT").

C. Analysis

Here, although the ALJ properly inquired and the vocational expert confirmed that her testimony was consistent with the DOT, an apparent conflict existed. The VE testified that an individual unable to communicate in English could perform the jobs of ticket taker, parking-lot attendant, and assembler. The DOT provides, however, that a ticket-taker position requires Level 2 language skills, and positions as parking-lot attendant or assembler require Level 1 language skills. See DICOT 344.667-010, available at 1991 WL 672863; DICOT 915.473-010, available at 1991 WL 687865; DICOT 732.684-018, available at 1991 WL 679839.

According to the DOT, a person with Level 1 language proficiency can "[r]ecognize [the] meaning of 2,500 (two- or three-syllable) words," read "95-120 words per minute," and "[c]ompare similarities and differences between words and between series of numbers." See DICOT 915.473-010, available at 1991 WL 687865; DICOT 732.684-018, available at 1991 WL 679839. A person with Level 2 language proficiency has a "[p]assive vocabulary of 5,000-6,000 words," can read "190-215 words per minute," "[r]ead

8

adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation," and "[r]ead instructions for assembling model cars and airplanes." See DICOT 344.667-010, available at 1991 WL 672863. Thus, although a claimant is not per se disabled if illiterate, Pinto, 249 F.3d at 847, an ALJ must "definitively explain," or elicit such an explanation from a VE, why the claimant's illiteracy is not a barrier to performing a particular job, see id. (remanding in part because ALJ failed to explain or elicit testimony concerning how illiterate claimant could perform job requiring Level 1 language proficiency). Absent such an explanation, Miksic's testimony did not constitute substantial evidence upon which the ALJ could rely in making his step-five finding. Remand is therefore required. See id.[3]

D. Remand for further proceedings is appropriate

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Remand for further proceedings is appropriate "if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587,

---

[3] The Court might have been inclined to find any error harmless given that the DOT's description of the assembler job, unlike the other two the ALJ relied on, appears not to require any reading or speaking skills. See DICOT 732.684-018, available at 1991 WL 679839 (not referencing reading and indicating that activity of talking "does not exist"). But that job does require medium work, with "physical demand[s] . . . in excess of those for Light Work." Id. Plaintiff was limited to a light-work RFC. No explanation was given for that deviation from the DOT, either.

593 (9th Cir. 2004); see Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000) (explaining that "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

Remand is appropriate here to clarify the vocational expert's testimony regarding Plaintiff's ability to perform the jobs of ticket taker, parking-lot attendant, and assembler despite her English-language illiteracy (and, as to the assembler position, her RFC only for light work, not medium).

## VI. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 8, 2014

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge